UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                                            :
UNITED STATES OF AMERICA,         :        CASE NO. 1:04-CR-580
                                            :
                Plaintiff,                  :
                                            :
vs.                                         :        ORDER AND OPINION
                                            :        [Resolving Doc. Nos. 225, 227, 230, 265]
NATHANIEL GRAY, et al.,            :
                                            :
                Defendants.                 :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Before the Court is Defendant Gray's Motion to Suppress All of the Title III Intercepts seized

pursuant to the Omnibus Crime Control and Safe Street Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-

2520. [Doc. No. 227].  Defendants Monique McGilbra, Joseph Jones, and Gilbert Jackson joined Gray's

motion to suppress.  [Doc. No. 225, 230 & 265].  The Government opposes these motions. [Doc. Nos.

235 & 239].  For the following reasons, the Court **DENIES** Defendant Gray's motion to suppress.

                        I.  FACTUAL BACKGROUND

        Defendant Gray generally contends that evidence obtained through the Title III intercepts should

not be received because of claimed failures to comply with formalities associated with the application

process.  With this argument, Gray points to the Government's failure to identify the Department of Justice

("DOJ") official who authorized the Title III application, failure to attest to the applications, and failure to

-1-

Case No. 1:04-CR-580
Gwin, J.

include the name of the authorizing DOJ official in the Title III Order.  In addition, Gray complains that

insufficient evidence supported the Title III applications and argues that investigating authorities failed to

minimize the wiretap's intrusiveness.

The wiretaps originated with a January 15, 2002, application submitted by David A. Sierleja, an

attorney of the DOJ.  Sierleja made the application as an investigative or law enforcement officer under

Title III.[1]  The January 2002 application has several defects.  First, Sierleja had received approval for the

application from Deputy Assistant Attorney General Malcolm, who is a specially-designated official

authorized to review and approve Title III wiretaps.  However, the January 15, 2002, application does not

identify the specially-designated Justice Department official who approved the application.  The Title III

application also does not include a copy of the letter from the specially-designated DOJ official that

approved the intercept.  In addition, the January 15, 2002, application was not sworn under oath or

affirmation, and it does not indicate the time when AUSA Sierleja executed it.  Sierleja filed the application

on January 16, 2001.

On January 16, 2002, Judge Oliver reviewed the application and issued an order granting an

application to commence a thirty-day Title III wiretap of Gray's various phone business and cellular phone

numbers.  Like the application, the order does not identify the Justice Department official who approved

_____

[1] An "investigative or law enforcement officer" is defined as "any officer of the United States or of a State or political division thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses."  18 U.S.C. § 2510(7).

-2-

Case No. 1:04-CR-580
Gwin, J.

the application.[2]

Following the expiration of the thirty-day period, the Government sought to renew the wiretap. In applying to renew the wiretaps, however, the Government failed to comply with the statutory requirement that specially-designated DOJ official approve the renewal application. A district court judge granted the application. After later appreciating that the Government had not obtained necessary approval from any authorized Justice Department official, the Government self-suppressed the tainted interceptions from the unauthorized renewal applications, spanning from February 15, 2002 to May 13, 2002. Gov't Br., Dkt 239, at 31.

Seeking to correct the problem associated with the interceptions from February 15, 2002 through May 13, 2002, the Government filed a new Title III wiretap application on July 30, 2004, regarding the same phone numbers. Correcting the problems in the earlier applications, the July 30, 2002, application identifies the authorizing official and attaches two exhibits: the DOJ letter specially designating the authorizing official and the authorizing official's letter approving the July 30, 2002 intercept.[3] In attempting to show probable cause for this July 30, 2002, application, the Government repeated many of the probable

_____

[2] The application and the order were filed under seal by the district court.

[3] In contrast, the July 30, 2002 application clearly identified the officer authorizing the application: "Pursuant to Section 2516 of Title 18, United States Code, the Attorney General of the United States has specially designated the Assistant Attorney General in charge of the Criminal Division and any Deputy Assistant Attorney General of the Criminal Division to exercise the power conferred on the Attorney General by Section 2516 of Title 18, United States Code, to authorize this application. Under the power designated him by special designation of the Attorney General pursuant to Order Number 2407-2001 of March 8, 2001, an appropriate official of the Criminal Division has authorized this application. Copies of the Attorney General's order of special designation and the Memorandum of Authorization approving this application are attached to this application as Exhibits 1 and 2, respectively." Application of July 30, 2002, at ¶ 3. Additionally, the exhibits to the July 2002 Application included the July 30, 2002 letter from the authorizing officer.

-3-

Case No. 1:04-CR-580
Gwin, J.

cause allegations that were contained in its January 16, 2002 application.  However, the Government also added evidence intercepted in the January 16, 2002 through February 14, 2002 period of wiretaps and evidence derived independently.  Judge Matia approved the application on July 30, 2002, and the clerk's office filed the documents under seal.

## II. PROCEDURAL BACKGROUND

On November 19, 2004, the Grand Jury issued an indictment as to Joseph Jones.  On January 14, 2005, the Grand Jury issued a superseding indictment, adding Monique McGilbra, Nathaniel Gray, and Gilbert Jackson among others.  Defendant Gray filed the instant motion under seal on April 22, 2005.  Trial is set to begin on June 13, 2005.

On April 28, 2005, the Court conducted a suppression hearing.  The clerk of the court testified, and counsel examined the applications and orders for the intercepts authorized in January 2002 and July 2002.

On May 3, 2005, the Court reconvened the suppression hearing.  Although the Defendants had earlier sought to compel the testimony of Judge Oliver, the district court judge who had authorized the January 15, 2002, wiretaps, they withdrew their subpoena.  At the May 3, 2005, reconvened hearing, the Government proffered that, if required, Judge Oliver would testify, that he was aware that the Government had obtained approval for the January 15, 2002, wiretap application before he signed the order.

On May 3, 2005, the Government filed a motion requesting the Court to accept the Government's proffer, or, in the alternative, to reopen the hearing to allow AUSA Sierleja to testify.  The Court granted the motion to reopen the hearing and on May 9, 2005, the Court held a hearing on the Government's

-4-

Case No. 1:04-CR-580
Gwin, J.

motion.  The Court orally denied the Government's motion to accept the proffer.

After denying the Government's motion to accept the proffer, the Court reopened the hearing.  On May 9, 2005, AUSA Sierleja testified.  Sierleja stated that at the time that he originally applied for the Title III intercept, he told Judge Oliver "that there was a review process [in the Justice Department] and ultimately an approval for that before we submitted anything to him."  Sierleja further explained that he had earlier obtained authorization from a specially-designated DOJ official before submitting the application to Judge Oliver for approval.  It is not clear from the record whether Sierleja informed Judge Oliver of the name of the authorizing official or whether he merely informed Judge Oliver that he had obtained approval. When he met with Judge Oliver, Sierleja had Malcolm's letter approving the application with him, but he did not show the authorizing letter to Judge Oliver.

## III.  DISCUSSION

In moving to suppress the Title III wiretaps, Defendant Gray advances numerous arguments.  Gray argues that the January 2002 intercepts should be suppressed because the application and order were flawed in several respects.  Gray's primary argument is that the Court should suppress the January 2002 intercepts because the application and the order that authorized the wiretaps omitted the identity of the high-ranking Justice Department official who approved the interception.  Additionally, Gray maintains that the intercepts should be suppressed and argues that insufficient evidence shows that Sierleja obtained approval from a specially-designated Justice Department official for the January 2002 and July 2002 applications. Gray further asserts that the January 2002 intercepts should be suppressed because Sierleja did not swear the application under oath or affirmation.  Gray next asserts that *all* of the intercepts should be suppressed

-5-

Case No. 1:04-CR-580
Gwin, J.

because the application and order did not support a finding of probable cause and a finding that electronic surveillance was necessary for the investigation.  Gray additionally claims that the Government failed to minimize the interception of non-pertinent communications.  Gray contends that the Government failed to terminate the surveillance after the period necessary to achieve the objective of the authorization.  As another argument, Gray maintains that the Government failed to timely disclose the surveillance.  In addition to arguing that the Title III violations warranted suppression, Defendant Gray argued that all of the violations cumulatively required suppression.

The Government opposes Defendant Gray's motion.  For the reasons discussed below, the Court denies Defendant Gray's motion.

Title III sets out requirements for receiving permission to intercept wire communications and provides for suppressing interceptions "if the disclosure of that information would be in violation of this chapter." 18 U.S.C. § 2515.  A defendant may move to suppress the intercepted communications on three statutory grounds:

> (i) the communication was unlawfully intercepted;
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a).  Although Title III allows for suppression of communications intercepted in violation of the statute, the Supreme Court has cautioned that "suppression is not mandated for every violation of Title III." *United States v. Chavez*, 416 U.S. 562, 575 (1974).

Case No. 1:04-CR-580
Gwin, J.

*A. Authorization by a Specially-Designated Official,* 18 U.S.C. § 2516(1)

Defendant Gray argues that the January 2002 and July 2002 intercepts should be suppressed because a high-ranking Justice Department official failed to approve the applications in violation of Section 2516(1).

In this case, the authorization letters for both the January and July intercept applications include the typed name of Michael Chertoff, *Assistant Attorney General, Criminal Division, Department of Justice,* but Deputy Assistant Attorney General John Malcolm signed the letters.  Gray argues that this violates Section 2516(1) and that the intercepts should be suppressed.  As to both the January 2002 and July 2002 intercepts, Gray highlights the fact that the authorization letters were seemingly drafted under Chertoff's name, but they bear the signature of Deputy Assistant Attorney General Malcolm.  Additionally, as to the January 2002 application, Defendant Gray argues that it is not clear which high-ranking DOJ official authorized the interception, if any.  Gray's arguments fail.

Title III requires a specially designated official to approve applications for the interception of wire or oral communications.  18 U.S.C. § 2516(1).  Failure to obtain authorization before submitting an application to a district judge constitutes grounds for suppression.  *See* 18 U.S.C. § 2518(10)(a).  The Supreme Court has observed that Title III "plainly calls for the prior, informed judgment of enforcement officers desiring court approval for intercept authority, and investigative personnel may not themselves ask a judge for authority to wiretap or eavesdrop.  The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." *United States v. Giordano*, 416 U.S. 505, 515 (1974).  The requirement in Section 2516(1) "was designed to insure

Case No. 1:04-CR-580
Gwin, J.

that *decisions to wiretap* were made by the named officials and did not reach into the lower echelons of command." *United States v. Lambert*, 771 F.2d 83, 90 (6th Cir. 1985) (internal quotation marks omitted), *cert. denied*, 474 U.S. 1034 (1985).

First, Gray argues that Deputy Assistant Attorney General Malcolm was not specially designated and that no one authorized the January 2002 and July 2002 applications. Despite Gray's assertions, the Court finds that Deputy Assistant Attorney General Malcolm was specially designated to approve Title III intercept applications. On March 8, 2001, Order No. 2407-2001 from Attorney General John Ashcroft designated any Deputy Assistant Attorney General of the criminal division as having authority to approve wiretap applications. Thus, Malcolm had authority to authorize Title III intercept applications. Furthermore, the Court finds that Deputy Assistant Attorney General Malcolm authorized the January 2002 and July 2002 applications. *See United States v. Florea*, 541 F.2d 568, 573-74 (6th Cir. 1976), *cert. denied*, 430 U.S. 945 (1977). The Government introduced letters approving the specific January 2002 and July 2002 intercept applications at issue in this case, and both letters had Malcolm's signature. Because both the January 2002 and July 2002 had actual approval from a high-ranking DOJ official with authority, the applications comply with Section 2516(1).

Because Malcolm had authority to approve interception applications under Section 2516(1), he "is presumed to have properly exercised that power and the condition[s] precedent [are] presumed to have been met unless the defendants offer evidence, apart from mere conjecture or speculation, to rebut this presumption." *See United States v. O'Connell*, 841 F.2d 1408, 1416 (8th Cir. 1985) (internal quotation marks omitted), *cert. denied*, 487 U.S. 1210 (1988); *see also United States v. Ceballos*, 302 F.3d 679,

-8-

Case No. 1:04-CR-580
Gwin, J.

685 (7th Cir. 2002) (holding that defendant failed to establish that the Deputy Assistant Attorney General

lacked authority where the person stated that her title was Deputy Assistant Attorney General and the

government provided an executive order designating any Deputy Assistant Attorney General as authorized),

*cert. denied*, 537 U.S. 1136 (2003).

As to the January 2002 and July 2002 applications, the Court finds that Defendant Gray has failed

to introduce sufficient evidence to establish a dispute in the authenticity of Deputy Assistant Attorney

General Malcolm's authorizations.

Gray argues that the intercepts should be suppressed because the authorization letters were drafted

for Chertoff but signed by Malcolm.  However, this argument is not sufficient to impugn the authenticity of

the Malcolm's authorization letters.  The Government has established that Deputy Assistant Attorney

General Malcolm had authority to approve the interceptions at issue in this case.  That the authorization

letter was drafted for signature by Assistant Attorney General Chertoff is irrelevant because the Court

presumes that Malcolm properly exercised his authority in approving the intercept applications.  *See United

States v. Monarrez-Cano,* No. 8:01CR273, 2002 U.S. Dist. LEXIS 12561, at **5-6 (D. Neb. July 10,

2002) (denying a motion to suppress when Deputy Assistant Attorney General Swartz signed the

authorization letter, which was drafted for Chertoff's signature).  Gray's argument is insufficient to rebut

the presumption that Malcolm properly exercised his authority.

Defendant Gray next argues that Deputy Assistant Attorney General Malcolm's signatures on the

January and July authorization letters not actual signatures, but were stamps.  The Government contends

that simply comparing Malcolm's two signatures shows that they were his actual signature and not a stamp.

-9-

Case No. 1:04-CR-580
Gwin, J.

At the hearing, Defendant Gray has conceded as much, and he abandoned this argument.  Even if Gray still

maintained that Malcolm's signatures were stamps, which they do not appear to be, the Court will not infer

that the Government failed to secure authorization solely because the DOJ official's signature was a stamp.

*See United States v. Citro*, 938 F.2d 1431, 1436 (1st Cir. 1999) ("We decline to find that the fact that

Keeny's signature was stamped rather than originally signed suggests that neither Keeny nor Dennis (both

properly designated officials), authorized the intercept application.").  To dispute the authenticity of an

official's signature approving a wiretap application, more evidence than mere speculation is necessary.

*Accord United States v. De le Fuente*, 548 F.2d 528, 532 (5th Cir. 1977) ("Requiring that the

government 'prove up' the authorizing signature . . .  every time it wishes to introduce wiretap evidence at

a criminal trial would insure a field day for captious and costless technical objections.").

Accordingly, the Court rejects Defendant Gray's arguments that the January 2002 and July 2002

applications should be suppressed because the Government failed to obtain approval from a specially-

designated DOJ official as Section 2516(1) requires.

   *B. Failure to Make Application Upon Oath or Affirmation to a Judge*, 18 U.S.C. § 2518 (1)

Additionally, Gray maintains that the January 2002 interceptions should be suppressed  because

the application was facially insufficient since it was not made upon oath or affirmation as Section 2518(1)

requires.

The Government argues that Title III does not require that the district judge to confirm that the

AUSA made his application under oath both in the application *and* order.  The Government argues that

Defendant Gray has not presented sufficient evidence to dispute Judge Oliver's finding that Sierleja

-10-

Case No. 1:04-CR-580
Gwin, J.

provided his application under oath.  The January 2002 application recites that Sierleja, as the applicant, has "been duly sworn."  The Government highlights that the order granting the application finds that the "[a]pplication under oath having been made before me by [the AUSA] . . .  an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7)."  Additionally, the FBI agent swore to its contents of her affidavit in the district judge's presence.

Title III requires the application for an intercept to be "made in writing upon oath or affirmation." 18 U.S.C. § 2518(1).  The Sixth Circuit has held that a written application and the special agent's sworn oral statements were sufficient to satisfy the oath or affirmation requirement.  *United States v. Florea*, 541 F.2d 568, 576 (6th Cir. 1976), *cert. denied*, 430 U.S. 945 (1977).

The January 2002 application states that it has been "duly sworn," but the last page was not signed by Judge Oliver, which would indicate that Sierleja made the application under oath or application. Assuming that this constitutes a violation of the oath or affirmation requirement, this violation is not grounds for suppressing the intercepted communications.  Defendant Gray has failed to show that suppression is warranted for failure to comply with the oath or affirmation requirement of Section 2518(1).  The Supreme Court has instructed that "suppression is not mandated for every violation of Title III."  *United States v. Chavez*, 416 U.S. 562, 574-75 (1974).  The January 2002 order from Judge Oliver, which approved Sierleja's application, states that Sierleja made the application under oath.  This is more than sufficient to satisfy the oath or affirmation requirement of Section 2518(1).  Suppression is not warranted on this ground.

*C. Identification Requirements in the Authorizing and Order*, 18 U.S.C. §§ 2518 (1)(a), (4)(d)

It is undisputed that the January 2002 application and order violated the identification requirements

-11-

Case No. 1:04-CR-580
Gwin, J.

of Section 2518(1)(a) and Section 2518(4)(d).  Title III requires both the application and order to include

the name of the high-ranking DOJ official who authorized the wiretap application.[4]   18 U.S.C. §§

2518(1)(a), (4)(d).  Because the January 2002 application and order omitted the identity of the authorizing

official, the January 2002 application and order were facially insufficient, which the Government concedes.

The issue is whether these violations require complete suppression, and suppression is not required if the

Title III violation "does not establish a substantive role to be played in the regulatory system."  *See Chavez*,

416 U.S. at 578.

Gray maintains that the identification requirements are central to the statutory purpose of Title III

and that the omission of the official's name warrants complete suppression of the January 2002 intercepted

communications as a remedy.[5]   In contrast, the Government contends that the omission constitutes a mere

technical defect that does not warrant suppression because Deputy Assistant Attorney General Malcolm,

in fact, authorized the intercept application, and he had authority to do so.

Both parties urge this Court to interpret *Chavez* to govern this case in conflicting ways.  For

example, the Government argues that *Chavez* stands for the rule that violation of the identification

---

[4] Each intercept application must include the "identity of the investigative or law enforcement officer making the application, **and** the officer authorizing the application."  18 U.S.C. § 2518(1)(a) (emphasis added).  Likewise, as to the order from the judge, Congress required that each order approving the interception of wire communication "shall specify . . . the identity of . . . the person authorizing the application."  18 U.S.C. § 2518(4)(d).

[5] Defendant Gray does not specify which statutory prong requires suppression.  *See* 18 U.S.C. § 2518(10)(a).  Under these facts, Gray could argue either that the intercepts should be suppressed either because the communications were unlawfully intercepted or because the January 2002 order was insufficient on its face.  18 U.S.C. §§ 2518(10)(a)(i), (ii).  Practically, courts have applied the same analysis to cases where the Government misidentified the authorizing official, regardless of whether the defendant argued that it was facially insufficient or that the communication was unlawfully intercepted.  *United States v. Radcliff*, 331 F.3d 1153, 1162 (10th Cir. 2003) (listing cases), *cert. denied*, 540 U.S. 973 (2003); *United States v. Vigi*, 515 F.2d 290, 293 (6th Cir. 1975), *cert. denied*, 423 U.S. 912 (1975).  Thus, regardless of Gray's theory of suppression, the result is the same.

-12-

Case No. 1:04-CR-580
Gwin, J.

requirements of Title III are mere technical defects that do not warrant suppression, regardless of whether

the application misidentified the authorizing official or omitted his name entirely. *See United States v.*

*Chavez*, 416 U.S. 562, 577-78 (1974) ("While adherence to the identification reporting requirements of

§§ 2518(1)(a) and (4)(d) thus can simplify the assurance that those whom Title III makes responsible for

determining when and how wiretapping and electronic surveillance should be conducted have fulfilled their

roles in each case, it does not establish a substantive role to be played in the regulatory system."); *see also*

*United States v. Acon*, 513 F.2d 513, 517 (3d Cir. 1975) (citing *Chavez*, 416 U.S. at 578) (same). On

the other hand, Gray argues that the Supreme Court, in *Chavez,* recognized a distinction between

misidentification and omission of the official's name. *See Chavez*, 416 U.S. at 573-74 (rejecting the lower

court's conclusion that "an order incorrectly identifying who authorized the application is equivalent to an

order failing to identify anyone at all as the authorizing official" and instead concluding that "[i]n no realistic

sense . . . can it be said that the order failed to identify an authorizing official" because the application and

order identified an Assistant Attorney General with authority to approve wiretap applications, even though

he did not actually approve the application at issue).

After examining the Supreme Court's decision in *Chavez*, the Court concludes that *Chavez* did

not resolve the issue present in this case. Both parties urge this Court to extend the holding of *Chavez* to

the facts of this case, and they extract seemingly conflicting dicta from *Chavez* to support their positions.

Neither party's interpretation of *Chavez* persuades the Court. In *Chavez*, the application misidentified the

authorizing official: the application identified the Assistant Attorney General when the Attorney General

actually approved it. The Supreme Court has not resolved the issue presented in this case, nor has the

-13-

Case No. 1:04-CR-580
Gwin, J.

Sixth Circuit has not ruled on it.  Therefore, the Court needs to decide whether omitting the authorizing official's name from the application and order warrants suppression of the intercepted communications.[6/]  The Court will analyze the issue under the test provided in *Chavez* and *Giordano*.

After careful consideration, the Court concludes that the omission of Malcolm's name, while not proper practices, does not warrant suppression.[7/]  In concluding that suppression is not appropriate, this Court is influenced by several facts to find that the violations of both Section 2518(1)(a) and Section 2518(4)(d) do not undermine the central statutory purpose of Title III.  *Cf. Chavez*, 416 U.S. at 575 (concluding that misidentification "did not affect the fulfillment of any of the reviewing or approval functions required by Congress").  Malcolm actually approved the January 2002 application and Judge Oliver had notice that a specially-designated official approved the application.  Furthermore, Defendant Gray was not prejudiced by the omission of Malcolm's name from the application and order because Defendant Gray was able to examine the authorization letters for their authenticity at the suppression hearing.  The Court analyzes the two violations separately.

*1. Identification Requirement in the Application,* Section 2518(1)(a)

---

[6/] The Court found only one reported case in the federal courts considering facts similar to these, namely the omission of the Justice Department official's name.  *United States v. Callum*, 404 F.3d 1150, 1155 (9th Cir. 2005).  In *Callum*, the Ninth Circuit concluded, with little analysis, that omitting the name of the authorizing official was analogous misidentifying him.  *See id.*.  However, the Ninth Circuit did not analyze whether the district court had notice that a Justice Department official approved the application.

[7/] In relying upon the specific circumstances of this case to deny Gray's suppression motion, the Court need not subscribe to the Government's theory that a misidentification is *worse than* the omission of any identification at all.  Even if the application or order misidentifies the DOJ official, the identification of a person fixes some authority with that person, which subsequently may be corrected upon discovery that he was not the official who authorized the intercept application.  In this sense, omission is arguably worse than identification because neither the application nor order fix responsibility with any higher-level DOJ official because both omitted the name of the authorizing official.

-14-

Case No. 1:04-CR-580
Gwin, J.

As to the Government's failure to include Malcolm's name in the application, the Court concludes

that the Government's conduct, while violating Section 2518(1)(a), satisfied the central purpose of the

identification requirement because Malcolm actually approved the application at issue, and Judge Oliver

had notice that the Justice Department had approved the application.  Before submitting the intercept

application, Sierleja actually received authorization from a specially-designated Justice Department official.

On January 14, 2002, Malcolm approved the January 2002 application.  Two days later, on January 16,

2002, Sierleja presented the wiretap application to Judge Oliver.  Because the Justice Department

authorized the January 2002 application before Sierleja submitted it, this suggests that the wiretaps should

not be suppressed.  *See United States v. Reyna*, 218 F.3d 1108, 1112 (9th Cir. 2000) (suppressing

wiretaps because the Government brought the application before receiving approval, even though the

application contained a general paragraph regarding authorization and the government told the issuing judge

that approval was on its way and approval arrived by facsimile one hour later ).

Sierleja told Judge Oliver that a Justice Department official approved the January 2002 intercept

application, which gave the district judge notice that a specially-designated official reviewed the application.

The purpose of Title III's identification requirements is to ensure accountability by a high-level executive

official.  *See United States v. Radcliff*, 331 F.3d 1153, 1162 (10th Cir. 2003), *cert. denied*, 540 U.S.

973 (2003); S. Rep. No. 1097, 90th Cong. 2d 101, at 572 (1968) (noting that Section 2518(1)(a)

requires the application to include the name of the authorizing official because "this fixes responsibility").

Because the procedures employed in this case sufficiently fixed responsibility with the Justice

Department, which satisfies the underlying purpose of the identification requirement, suppression is not

-15-

Case No. 1:04-CR-580
Gwin, J.

warranted for omitting Malcolm's name from the application. Since Judge Oliver had notice that approval had been earlier received, this case resembles misidentification cases where courts refused to suppress the intercepted conversations when an authorizing official in fact approved the application because the courts emphasized that the court had notice that the Justice Department authorized the application. *See, e.g., United States v. O'Connell*, 841 F.2d 1408, 1416 (8th Cir. 1988) (holding that misidentification in the application was insufficient to suppress wiretaps when the authorization letter was attached to the application and the court knew of the inconsistency). Even though Judge Oliver did not seem to know the name of the authorizing official, the result is not changed because a district court's determination whether to approve an intercept application is independent from the identity of the authorizing official. *See United States v. Acon,* 513 F.2d 513, 517 (3d Cir. 1975) (concluding that the name of the authorizing official was "not as likely" to affect the judicial determination of whether to approve an application for an intercept than the determination of the facts, such as probable cause). Because Judge Oliver knew that someone from the Justice Department had previously approved the January 2002 application, the Government accomplished the statutory purpose of fixing responsibility.

In light of all of the circumstances of the January 2002 application, the Court concludes that the omission of Malcolm's name from the application does not violate a substantive provision of the statute under these facts.

*2. Identification Requirement in the Order*, Section 2518(4)(d)

As to the omission of Malcolm's name from the order, the Court concludes that this violation of Section 2518(4)(d) does not warrant suppression. The Court finds that the circumstances in this case

-16-

Case No. 1:04-CR-580
Gwin, J.

sufficiently fixed responsibility within the Justice Department, which is the purpose of Title III's identification requirement as to the order. *See* S. Rep. No. 1097, 90th Cong. 2d 101, at 572 (noting that Section 2518(4)(d) requires the order to identify the person authorizing the application "so that responsibility will be fixed").

The omission of Malcolm's name from the order, although violating 18 U.S.C. § 2518 (4)(d), is not central to the statutory purpose of Title III. Other courts have concluded that violation of the identification requirement in Section 2518(4)(d) constitutes a mere technical defect, regardless of whether the order omitted the name of the authorizing official or misidentified him. *See United States v. Radcliff*, 331 F.3d 1153, 1163 (10th Cir. 2003) (concluding that suppression was not required when an authorized person in fact approved the application, the judge knew the official's identity, and the defendant knew the identity after he was indicted), *cert. denied*, 540 U.S. 973 (2003); *United States v. Lawson*, 545 F.2d 557, 562 (7th Cir. 1975) (holding that the purpose of Section 2518(4)(d) was not undermined where the order named an official without statutory authority, but the attorney general had in fact authorized the application because "the general purpose of the statute has been preserved"); *United States v. Acon,* 513 F.2d 513, 519 (3d Cir. 1975) (concluding that suppression was not required for violating Section 2518(4)(d) because the facts as they actually existed showed substantial compliance with the statute). Because Judge Oliver had notice that an official from the Justice Department approved the application, the Court concludes that the Government's omission of Malcolm's name from the order constituted a mere technical defect.

Furthermore, the Court cannot discern any resultant prejudice to Defendant Gray arising from the

-17-

Case No. 1:04-CR-580
Gwin, J.

violations of the identification requirements, which further suggests that suppression is not warranted under these facts.  *See United States v. Vento*, 533 F.2d 838, 860 (3d Cir. 1976) (concluding that attaching a copy, rather than the original, of the authorization letter constituted a technical defect because no prejudice occurred when the original document was available at the suppression hearing).  Malcolm in fact authorized the January 2002 application and had authority to do so.  Failure to include the identity of the authorizing officer in the application and order, while not best practices and a clear violation of Title III, "does not establish a substantive role to be played in the regulatory system."  *Chavez*, 416 U.S. at 578. The Court agrees that "suppression is not required for facial insufficiency relating to less critical requirements which may be varied by subsequent affidavits." *United States v. Acon*, 513 F.2d 513, 517 (3d Cir. 1975) (permitting affidavits first presented at the suppression hearing to demonstrate that an appropriate official actually authorized the application).

Thus, the Court concludes that the omission of Malcolm's name from the order constitutes a mere technical defect that does not warrant suppression on this basis.[8]

In light of the facts in this case, violation of the identification requirements does not play a central role in the statutory scheme.[9]  Defendant Gray is not entitled to suppression for the omission of Malcolm's name from the application and order.

---

[8] Gray further argues that these violations, when combined with the other Title III violations, warrant suppression of all Title III intercepts.  The Court does not find this argument persuasive.  Neither the individual violations alone nor the cumulative effect of all of the violations warrants the drastic remedy of complete suppression.

[9] In determining whether the omission of the official's name does not warrant suppression in this case, the Court confines its analysis to the facts before it.  The Court does not determine whether suppression may be warranted under different facts.

-18-

Case No. 1:04-CR-580
Gwin, J.

  *D. Judicial Factual Findings*

   Under Title III, a judge may issue an order permitting the interception of wire, oral, or electronic

communications if the "judge determines on the basis of the facts submitted by the applicant that–

     (a) there is probable cause for belief that an individual is committing, has
committed, or is about to commit a particular offense . . . .
     (b) there is probable cause for belief that particular communications concerning
that offense will be obtained through such interception;
     (c) normal investigative procedures have been tried and have failed or reasonably
appear to be unlikely to succeed if tried or to be too dangerous;
     (d) . . . there is probable cause for belief that the facilities from which, or the place
where, the wire, oral, or electronic communications are to be intercepted are being used,
or are about to be used, in connection with the commission of such offense.

18 U.S.C. § 2518(3).

   Defendant Gray challenges the district court's findings that the probable cause existed for the Title

III interception and that normal investigative procedures reasonably appeared unlikely to succeed.

  *1. Probable Cause*

   Gray contends that the Government failed to establish probable cause for the Title III intercepts

as to the January 2002 application.  Gray argues that each subsequent affidavit relied in part on the

information gathered from the first affidavit, and he contends that all evidence subsequently obtained should

be suppressed.  Gray further argues that the information in the July 2002 affidavit is stale because the

allegations were more than six months old and Gray had no relationships with the new city officials after

the city administration changed in January, 2002.

   In contrast, the Government contends that more than a substantial basis supports the district judges'

probable cause determination as to the January 2002 and July 2002 wiretaps.  Furthermore, the

Case No. 1:04-CR-580
Gwin, J.

Government claims that the allegations in the July 2002 affidavit were not stale because the alleged criminal activity was ongoing and permanent.

To warrant suppression for failing to find probable cause, Defendant Gray must show that the district judge abused his discretion in approving the application. *See United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988). Defendant has not met this burden. The Court finds that neither Judge Oliver nor Judge Matia abused his discretion in approving the applications because the respective affidavits support a finding of probable cause.[10/]

In determining whether probable cause was established, the Court examines the application under the totality of the circumstances in a "reasonable fashion and common sense manner." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988). The Court accords "great deference" to the issuing judge's determination of probable cause because "[r]easonable minds frequently may differ on the question whether a particular affidavit established probable cause." *United States v. Giacalone*, 853 F.2d 470, 479 (6th Cir. 1988), *cert. denied*, 488 U.S. 910 (1988); *Alfano*, 838 F.2d at 162. Even if a subsequent trial judge or reviewing court arrives at a different conclusion, suppression of the evidence is not required or warranted. *See Alfano*, 838 F.2d at 162. Thus, the Court upholds the finding of probable cause if the record contains a "substantial basis for . . . Concluding that probable cause existed." *United States v.*

---

[10/] Even if probable cause were lacking, which it is not, Defendant Gray would still not prevail. The drastic remedy of suppression is proper only where: (1) the judicial officer issuing the warrant "abandoned his detached and neutral role;" (2) the officers were "dishonest or reckless in preparing their affidavit" supporting the issuance of the wiretap order; or (3) the agents "could not have harbored an objectively reasonable belief in the existence of probable cause." *United States v. Leon*, 468 U.S. 897, 926 (1984); *United States v. Giacalone*, 853 F.2d 470, 479-80 (recognizing that the principle from *Leon* applies to Title III cases).

Case No. 1:04-CR-580
Gwin, J.

*Lambert*, 771 F.2d 83, 92 (6th Cir. 1985) (internal quotation marks omitted), *cert. denied*, 474 U.S. 1034 (1985).

The Court finds that a substantial basis exists for Judge Oliver's finding of probable cause to believe that the alleged crimes were committed and would continue through the use of the telephones.  While the Court will not summarize the extensive allegations from the Special Agent Christine Oliver's affidavit, the Government amply described the affidavit's allegations as to CS-1, CS-2, and CS-3.  The Court finds that the affidavit includes a sufficient basis for reliability and veracity.  Given the detailed nature of the allegations, the affidavit provides more than a substantial basis for probable cause to believe that Gray committed the alleged crimes over the phone lines and would continue to do so.

The Court further finds that a substantial basis exists for Judge Matia's finding that probable cause existed based upon the affidavit submitted on July 30, 2002 by Special Agent Clyde Wallace III, which included evidence obtained from the first thirty-day interception period and other evidence derived independently.  In according great deference to Judge Oliver's and Judge Matia's findings, the Court upholds the determination of probable cause because the record demonstrates a substantial basis for concluding that probable cause existed.

Gray advances two other arguments concerning the July 2002 affidavit.  He argues that the affidavit contained stale allegations because they were more than six months old.  However, the Court agrees with the Government that the allegations in the affidavit were not stale because the affidavit established probable cause to believe that Gray's criminal activity was ongoing and committed through his various phone lines, including his business lines.  Just as this Court rejected Onuwar's staleness argument, so too it rejects

-21-

Case No. 1:04-CR-580
Gwin, J.

Gray's.

Although Defendant Gray suggests that the information is stale because it is more than six months old, no arbitrary time limit applies to determining staleness. *See United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001); *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988), *cert. denied*, 488 U.S. 1005 (1989). Instead of "measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Harris*, 255 F.3d 288, 299 n.3 (6th Cir. 2001).

Turning to this case, the Court concludes that the allegations in the July 2002 affidavit were not stale. The affidavits allege ongoing criminal activity, including wire fraud and money laundering. Allegations of ongoing criminal activity, as here, "will generally defeat a claim of staleness." *United States v. Greene*, 250 F.3d at 481. The things being seized were the conversations about ongoing business transactions. The place to be searched were long-term facilities, namely a business allegedly operating as a long-term center of corruption, which constitutes a secure operational base. After considering these variables, the Court concludes that the affidavit for the July 2002 application was not stale.

Moreover, Gray claims that the July 2002 interceptions should be suppressed because the affidavit contained a significant falsehood. The affidavit alleges that on February 6, 2002, Gilbert Jackson told Gray that "I had to bribe the Mayor's office." Gray contends that Jackson actually said "a broad in the Mayor's

-22-

Case No. 1:04-CR-580
Gwin, J.

office."  Gray argues that this so-called falsehood, which was contained in the affidavit, warrants

suppression of the interceptions.  The Government disputes Gray's interpretation of the phone call,

contending adamantly that Gray's translation that Jackson referred to "a broad" is incorrect.  However,

the Government admits that Jackson's word was unclear, and it instead suggests that Jackson referred to

a "boy" in the Mayor's office.  Regardless of whether Jackson referred to a "boy" or a "broad" in the

Mayor's office, the remaining context of the intercepted communication substantially supports a finding of

probable cause that Jackson bribed the official in the Mayor's office.  For example, Jackson stated twice

that he would "flip it to him."  Thus, the Court finds that, despite the possible inaccurate translation of one

word in the affidavit, the remaining context of the interception provided a substantial basis that probable

existed that Gray co-conspired with Jackson to bribe a public official.

Thus, based upon the totality of the circumstances, the Court finds that the record includes a

substantial basis for concluding that probable cause existed.  Defendant Gray's argument fails.

2. *Necessity,* 18 U.S.C. § 2518(1)(c)

Defendant Gray claims that the applications contained only a conclusory statement of necessity.

Gray contends that other investigative techniques were available to the Government, and that no factual

basis supported the statement for the necessity of the electronic surveillance.

In contrast, the Government argues that the affidavits for the January 2002 and July 2002

applications include detailed information concerning other investigatory techniques that have been tried or

failed.  The affidavit explained why traditional techniques were insufficient for this investigation.  The Court

concludes that the Defendant's argument fails.

-23-

Case No. 1:04-CR-580
Gwin, J.

Title III requires that the government's interception application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518 (1)(c). In showing the necessity of electronic surveillance, the Government need not prove that it has exhausted every conceivable investigative method.  *See United States v. Alfano*, 838 F.2d 158, 163 (6th Cir. 1988). The purpose of the necessity requirement "is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques."  *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002); *see also United States v. Corrado*, 227 F.3d 528, 539 (6th Cir. 2000).  The issuing judge has "considerable discretion" in deciding whether other investigative methods might be successfully employed.  *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977).

Turning to this case, the Defendant's arguments are insufficient to disturb the issuing judge's finding that the application displayed the necessity of electronic surveillance pursuant to Section 2518(1)(c).  For example, Gray speculates regarding other possible investigatory methods, such as arguing that the Government should have used Garland Hardeman to prod Gray for information about bribing Monique McGilbra.  Gray further argues that CS-2 should have obtained more information.  Neither of these arguments warrants suppression.  At best, Gray's arguments are haphazard hunches as to conceivable other investigatory methods.  However, given the considerable discretion accorded to the issuing judges, this Court will not disturb the findings that the January 2002 and July 2002 affidavits demonstrated the necessity of electronic surveillance for this investigation.

-24-

Case No. 1:04-CR-580
Gwin, J.

Gray further argues that the ability of a confidential informant to access Gray cannot be the basis for maintaining that other techniques would fail.  However, Gray's argument lacks merit.

*E. Minimization Requirement*

Gray also argues that the Government failed to comply with the minimization requirement under 18 U.S.C. § 2518(5) in the January 2002 and July 2002 orders and that the Court should suppress *all* intercepts under 18 U.S.C. § 2518(10)(a)(iii).  As evidence, he submitted eighteen intercepted conversations from the first thirty days of the wiretap.  None of the examples submitted by Gray involve intercepted conversations that the Government indicates that it will use at trial.  Gray asserts that many of the intercepted communications were non-pertinent, including subjects such as private matters, health of family, and personal problems.  As an alternative to complete suppression, Gray requested time to review all intercepted conversations "in order to demonstrate the failure to minimize properly."

In contrast, the Government argues that the monitoring agents complied with the minimization requirements.  Even if the monitoring agents failed to minimize non-pertinent communications, the Government contends that the appropriate remedy is to suppress only the conversations that the Government failed to minimize and not all interceptions.

Title III requires the government to conduct electronic surveillance "in such a way as to minimize the interception of communications not otherwise subject to interception."  18 U.S.C. § 2518(5).  Minimization is accomplished when the interception of non-pertinent calls had been adequately avoided.  To assess minimization efforts, the Court conducts "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time."  *Scott v. United States*, 436 U.S. 128, 136

-25-

Case No. 1:04-CR-580
Gwin, J.

(1978); *United States v. Feldman*, 606 F.2d 673, 677-78 (6th Cir. 1979).  Title III "does not forbid the interception of all non-relevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." *Scott*, 436 U.S. at 140.  Thus, the "government is held to a standard of honest effort; perfection is usually not attainable, and is certainly not legally required." *United States v. Uribe*, 890 F.2d 554, 557 (1st Cir. 1989).

Initially, the Government must make a prima facie showing of reasonable minimization. *See United States v. Willis*, 890 F.2d 1099, 1102 (10th Cir. 1989).  Then, the burden shifts to the defendant to show that more effective minimization was possible.  *Willis*, 890 F.2d at 1102.  As to the defendant's burden, "[i]t is not enough for defendants to identify particular calls which they contend should not have been intercepted; they must establish a pattern of interception of innocent conversations which developed over the period of the wiretap."  *United States v. Lawson*, 780 F.2d 535, 540 (6th Cir. 1985).  If the defendant fails to meet this burden, the Court will deny the motion to suppress, even if the defendant has identified isolated instances where the Government failed to minimize non-pertinent conversations. *See, e.g., United States v. Armocida*, 515 F.2d 29, 45 (3d Cir. 1975).

As examples of communications that the Government failed to minimize, Defendant Gray identifies twelve conversations in his brief, and he submitted recordings of eighteen conversations to the Court.[11]/

---

[11]/ Some of the conversations discussed in Gray's brief were included on the CD submitted at the suppression hearing as Defendant Exhibit B:

(1) January 16, 2002, fourteen minute call to Shelton Richardson, who was the sitting mayor of the City of North Randall, Ohio, discussing his medical condition.  The Government contends that investigating agents believed that Gray had improper contact with Shelton, and they discuss other public officials.

(2) January 17, 2002, thirty-six minute conversation with Terri Davis about her family.  The Government maintains that Gray discusses his business opportunities in Houston, with call waiting call from Gray's father, and they

(continued...)

Case No. 1:04-CR-580
Gwin, J.

The Government counters that these communications exhibit how Gray intermingled personal and business matters.  The Government contends that seven of the calls were relevant to the overall investigation, four of the calls involve Gray speaking with or about a public official that the FBI has reason to believe that he bribed, and three were less than two minutes (making minimization impossible).  The Government concludes that at most, Defendant Gray identified two calls that were "arguably non-minimized."

   *1. Prime Facie Showing*

   The Court finds that the Government has made a prima facie showing that it made reasonable efforts to minimize the interception of non-pertinent calls.  The Court finds that the monitoring agents managed the wiretap in an objectively reasonable manner, took precautions not to overreach, and typically minimized non-pertinent conversations as was practicable.

---

[11]/(...continued)
discuss business matters, including three councilmen who are in financial trouble.
   (3) January 17, 2002, Gray and his ex-wife, Annette Gray, discussed their children, music and sports lessons, and other personal matters for five minutes.  The Government contends that Gray's finances, including expenditures, are pertinent to the ongoing investigation.
   (4) January 31, 2002, Gray and his father discussed sports.  The Government maintains that Gray and his father discussed former Mayor White.
   (5) February 1, 2002, nineteen minute conversation with his girlfriend, Valerie, about personal matters.  The Government contends that Gray discusses a trip that he is planning with the Clerk of Courts for Cuyahoga County before his conviction and incarceration for theft from office.
   (6) February 1, 2002, 2:28 minute conversation between Gray and Valerie discuss personal matters.  The Government contends that minimization was not possible.
   (7) February 10, 2002, four minute conversation between Gray and Valerie discussing personal matters.  The Government contends that minimization was impossible because Gray and Valerie usually discuss business matters.
   (8) August 1, 2002, when Nina Upshaw, Gray's office manager, orders lunch.  Defendant contends that the interception lasted 17 minutes, but the Government maintains that it lasted 1:13 minutes.
   (9) October 1, 2002, thirty-one minute conversation between Gray and sitting City of Cleveland Councilman Zack Reed discussing council meetings and convicted public officials.
   (10) November 18, 2002, ten minute conversation between Nina Upshaw and Valerie discussed sending flowers to someone recovering from triple bypass surgery.
   (11) February 2, 2003, fifteen minute call between Gray and his father.
   (12) a two-minute call between Cassandra, Alexis, and Michael Robinson.

-27-

Case No. 1:04-CR-580
Gwin, J.

In establishing a prima facie case, the Government need not show good faith efforts to minimize. *E.g., Scott v. United States*, 436 U.S. 128, 145-46 (1978). An officer's subjective motivation is relevant only after a violation is found to determine whether to impose an exclusionary sanction. The reasonableness of the Government's efforts to minimize is a question of fact.

When the Government believes that a person is a member of the conspiracy, interception does not violate the minimization requirement. *See United States v. Malekzadeh*, 855 F.2d 1492, 1496 (11th Cir. 1988) (holding that interception of marital communications did not violate the minimization requirement when the investigators believed that the defendant's wife was involved in the conspiracy), *cert. denied*, 489 U.S. 1029 (1989).

Turning to this case, the Court examines several factors in assessing whether the Government accomplished minimization, including (1) the nature and complexity of the suspected crimes, including the alleged scope of criminal activity; (2) the thoroughness of the government's precautions to bring about minimization; and (3) the degree of judicial supervision over the surveillance process. *E.g., United States v. Feldman*, 606 F.2d 673, 678 (6th Cir. 1979). After reviewing the circumstances of the interceptions, the Court finds sufficient evidence that the Government conducted reasonable efforts to minimize the interception of non-pertinent communications.

As to the nature and complexity of suspected crimes, more extensive surveillance is warranted when the alleged scope of criminal activity is broad, even though this increases the risk of intercepting non-pertinent communications. *See Scott*, 436 U.S. at 140. Furthermore, courts require less efforts to minimize communication between known co-conspirators. *See United States v. Torres*, 908 F.2d 1417,

-28-

Case No. 1:04-CR-580
Gwin, J.

1424 (9th Cir. 1990).  Finally, courts tolerate "more extensive surveillance in conspiracy cases, particularly

narcotics conspiracies."  James Carr, 1 *Law of Electronic Surveillance* § 5:20.

When the investigation involves a conspiracy, courts permit more surveillance, especially if the case

involves a large conspiracy with several levels and unidentified participants than an investigation of a single

incident with a small number of known participants.  *See United States v. Earls*, 42 F.3d 1321, 1325

(10th Cir. 1994).  The investigation further increases in complexity when targets use ambiguous language,

making it difficult to determine whether the conversation relates to criminal activity.  *See United States v.

Ozar*, 50 F.3d 1440, 1447 (8th Cir. 1995), *cert. denied*, 516 U.S. 871 (1995); *United States v.

Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000) (recognizing that with "guarded or coded language, a higher

rate of nonrelevant intercepted calls should be expected because it takes longer to figure out the meaning

of a particular call"), *cert. denied*, 531 U.S. 1056 (2000).  Finally, when the phone line has a call-waiting

feature, officers may have to listen for a longer time to determine if the speaker or conversation has

changed.  James Carr, 1 *Law of Electronic Surveillance* § 5:20.

Turning to this case, the Court finds that the suspected crimes are complex, which warrants more

surveillance.  This case involves allegations of a large conspiracy with unidentified participants and several

separate transactions happening in different cities.  Another circumstance hampering the investigation is the

sheer volume of phone calls made.  In the first thirty days, 4,569 conversations were intercepted.  417 were

considered to be pertinent to the authorized objectives.  Aff. Clyde E. Wallace, III, ¶ 44 (July 30, 2002).

 Ultimately, more than 48,000 wire or oral communications were intercepted from these applications.

Furthermore, at least Gray's cellular phone had a call waiting feature, which could require agents to listen

-29-

Case No. 1:04-CR-580
Gwin, J.

longer to determine if the speaker is changed.  Moreover, the Government contends that Gray was involved in legal activities of lobbying and illegal activities of bribing public officials, which further increases the complexity of the investigation because it is more difficult to determine whether a conversation involves criminal activity.  The nature and complexity of suspected crimes in this case suggest that more extensive surveillance was warranted.

The percentage of non-pertinent calls intercepted is one factor for the Court to consider.  However, the Supreme Court observed that the percentage of non-pertinent calls may be high, yet the interception reasonable because of other factors, including the length of the call or the usage of ambiguous, coded language.  *See Scott*, 436 U.S. at 139-40; *see also United States v. O'Connell*, 841 F.2d 1408, 1417 (8th Cir. 1988), *cert. denied*, 488 U.S. 1011 (1989).  In the first thirty days, nearly seven percent of calls (300 calls of 4300) were minimized.  Other courts have found no violation of the minimization requirement, even when the Government intercepted all conversations over an extensive time period.  *See United States v. Abascal*, 564 F.2d 821, 827 (9th Cir. 1977).  This is admittedly a low percentage of minimization, which suggests that the monitoring agents failed to comply with minimization.  However, the Government argues that these numbers are misleading because many of the intercepted calls were less than two minutes in length.  The Government contends that calls of less than two minutes cannot be minimized because an agent must listen to the first few minutes of a conversation to determine whether it is pertinent.

In this case, the Government observed that more than 3300 of 4300 calls intercepted in the first 30 days were less than two minutes in length, contending that a call of two-minute duration is impossible to minimize.  The Court finds that a two-minute period is a reasonable time frame to determine whether the

-30-

Case No. 1:04-CR-580
Gwin, J.

communication is relevant.  For example, based upon the eighteen calls submitted to the Court, between ten and thirty seconds elapsed on some calls before someone picked up the phone.  Under these circumstances, monitoring during the first two or three minutes to determine the relevance of the call satisfies the minimization requirement.  *See United States v. Losing*, 560 F.2d 906, 909 n.1 (8th Cir. 1977), *cert. denied*, 434 U.S. 969 (1977).

The Court also considers the amount of judicial supervision over the interception.  In this case, judicial supervision was more than adequate, which suggests that the agents complied with the minimization requirements.  *See Feldman*, 606 F.2d at 678.  Each agent received a copy of the instructions regarding minimization.  Before interception began, the attorneys and FBI personnel, including all monitoring agents, discussed procedures for minimizing non-pertinent communications.  Both the January 2002 and July 2002 orders required minimization.[12/]  The monitoring agents submitted progress reports to keep the district court informed of the status of the interception.

In view of these circumstances, the Court concludes that the Government has established a prima facie showing that its minimization efforts were objectively reasonable.

### 2. Pattern of Intercepting Non-Pertinent Conversations

Since the Court found that the Government established a prima facie case, the burden shifts to Gray to show a pattern of intercepting non-pertinent conversations.  Gray has not met this burden.

---

[12/] In the January 2002 order, the "monitoring of wire communications shall be limited to those communications relevant to the pending investigation, in accordance with the minimization requirements of Chapter 119 of Title 18, United States Code."  Under the July 2002 order, monitoring should "be conducted in such a way as to minimize the interception and disclosure of the communications intercepted to those communications relevant to the pending investigation."

Case No. 1:04-CR-580
Gwin, J.

The Court finds that the Defendant has only identified isolated instances where the agents intercepted non-pertinent conversations.  In arguing that the Government failed to minimize, Gray has identified at most eighteen conversations.  The interceptions at issue present no pattern of insufficient minimization.  Although Gray identified twelve communications of 48,000 that the Government reportedly failed to minimize, he wholly failed  to "establish a pattern of interception of innocent conversations which developed over the period of the wiretap." *Lawson*, 780 F.2d 535, 540 (6th Cir. 1985).  Based upon the large volume of phone calls occurring during the surveillance periods, the Court finds that agents' failure to minimize is sporadic at most.  Assuming that some non-pertinent conversations were not minimized, Defendant has not established a pattern of intercepting non-pertinent conversations.

Even if the monitoring agents failed to minimize every non-pertinent conversation, this does not warrant the drastic remedy that Defendant Gray seeks.  At most, this would warrant suppression of the non-pertinent conversations.  *See United States v. Baltas*, 236 F.3d 27, 32 (1st Cir. 2001) ("[E]rrors in minimizing one particular interception . . . do not automatically warrant the suppression of all the evidence."), *cert. denied*, 532 U.S. 1030 (2001).  The First Circuit observed that "in a particularly horrendous case, total suppression may be . . . an appropriate solution," but the court also noted that the "sweeping relief" of complete suppression is not warranted absent a showing of "taint upon the investigation as a whole." *United States v. Hoffman*, 832 F.2d 1299, 1307 (1st Cir. 1987) (internal quotation marks omitted).  Despite Gray's contentions, sporadic failure to minimize does not warrant suppressing all intercepts.  The Government has stated that it does not intend to introduce any of the calls that Gray identified.

-32-

Case No. 1:04-CR-580
Gwin, J.

Defendant asserts that the Government's so-called failure to minimize warrants suppression of *all*
the intercepts, but he fails to cite any cases that granted complete suppression. Instead, Gray cites two
cases, *United States v. George*, 465 F.2d 772 (6th Cir. 1972); *United States v. Focarile*, 340 F. Supp.
1033 (D. Md. 1972). However, each of these occurred before the Supreme Court construed the
minimization requirement in *Scott v. United States*, 436 U.S. 128 (1978). Additionally, *George* is not
on point. In *George*, the Sixth Circuit suppressed the intercepts when the officers were never instructed
which conversations to intercept and they did not receive a copy of the order, which is not the case here.
*See United States v. George*, 465 F.2d 772 (6th Cir. 1972). Defendant Gray fails to demonstrate that
suppression of all intercepts is warranted based upon the few instances where the agents intercepted non-
pertinent conversations.

Thus, the Court finds that Gray failed to establish a pattern of intercepting non-pertinent phone calls.
Defendant Gray is not entitled to the drastic remedy of complete suppression for the few isolated incidents
where the agents failed to minimize non-pertinent conversations. Finally, the Court denies Defendant
Gray's request for additional time to review all intercepted conversations. Gray had ample time through
the several hearings on this motion to suppress to provide evidence to support his minimization argument.

*F. Termination Requirement*

Gray maintains that the Government failed to terminate its surveillance within a period sufficient to
achieve the objectives of the surveillance.

An order approving a Title III intercept "must terminate upon attainment of the authorized objective,
or in any event in thirty days." 18 U.S.C. § 2518(5). In this case, the Government admits that the

-33-

Case No. 1:04-CR-580
Gwin, J.

extension orders for the interceptions obtained during February 2002 through May 2002 were deficient

because the Government failed to obtain authorization from the Justice Department.  Clearly, these

extensions violated Title III.  However, complete suppression is a drastic remedy is not appropriate in this

case since the Government has self-suppressed the tainted intercepts obtained during the ninety-day period.

The Government's self-suppression of the tainted materials sufficiently remedies the Title III violation.

Further suppression is not warranted.

> *G. Disclosure Requirement*

Gray claims, without legal support, that the Government failed to timely disclose surveillance after

it ceased.

Title III requires notice to be served upon people named in an application within ninety days after

surveillance ceases, including the fact of the entry of the order or application, the date that surveillance was

authorized, and the whether communications were intercepted.  18 U.S.C. § 2518(8)(d).  However, a

post-interception failure to serve the notice and inventory cannot result in retroactively rendering the

interception unlawful.  *See United States v. Donovan*, 429 U.S. 413, 439 (1977).  Even if notice was not

given until after the ninety-day deadline, suppression is not required unless the defendant shows actual

prejudice arising from the delay.  *See United States v. Rizzo*, 492 F.2d 443, 447 (2d Cir. 1974), *cert.*

*denied*, 417 U.S. 944 (1974).  A court will not presume or infer prejudice from the length of the time lapse

involved.  *United States v. Barletta*, 565 F.2d 985, 990 (8th Cir. 1977).  Postponing service has been

permissible where the Government has established a need to continue the investigation.  *See United States*

*v. Capra*, 501 F.2d 267, 277 n.10 (2d Cir. 1974).

-34-

Case No. 1:04-CR-580
Gwin, J.

In this case, Gray has failed to show that the Government failed to timely disclose the surveillance to Gray.  Moreover, even if Gray showed that disclosure was untimely, he could not establish resulting prejudice.  The Court rejects Gray's argument concerning disclosure.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES with prejudice Defendant Gray's motion to suppress all Title III intercepts.

IT IS SO ORDERED.


Dated: June 6, 2005                                            s/          *James S. Gwin*
                                                                             JAMES S. GWIN
                                                                             UNITED STATES DISTRICT JUDGE